(February 11, 1914.)

SCHOOL DISTRICT NO. 12 OF LINCOLN COUNTY et al., Appellants, v. SCHOOL DISTRICT NO. 33 and INDEPENDENT SCHOOL DISTRICT NO. 16 and the BOARD OF COUNTY COMMISSIONERS OF LINCOLN COUNTY, Respondents.

[139 Pac. 136.]

REORGANIZATION OF SCHOOL DISTRICTS DISORGANIZED BY COUNTY DIVISION—POWERS OF COUNTY COMMISSIONERS UNDER COUNTY DIVISION ACTS — CONTIGUOUS TERRITORY — APPORTIONMENT OF BONDED INDEBTEDNESS.

1. Sec. 16 of chap. 3 and sec. 16 of chap. 4 of the 1913 Sess. Laws, being the acts creating the counties of Minidoka and Gooding from territory formerly comprising the county of Lincoln, authorized county commissioners of the county of Lincoln to attach those portions of school district territory disorganized by the new county lines, but remaining in their county, to "such adjoining school dis-

tricts . . . . in their county as they might determine best," and gave them discretion in the adjustment of such matters.

2. The fact that there is an area of unsurveyed, unoccupied and unorganized territory lying between an existing district and the particular unorganized school territory which the county commissioners desire to attach to the old district does not deprive the commissioners of the power to attach all of such territory to the old district under the provisions of said acts.

3. The power vested in the county commissioners by the county division acts creating Gooding and Minidoka counties, with reference to attaching unorganized territory to organized school districts, is accumulative and not exclusive, and does not divest them of the power theretofore possessed by them under the general school law to create and organize school districts.

4. *Held*, that no abuse of discretion is shown on the part of the county commissioners of Lincoln county in the adjustment of the bonded indebtedness among the respective school districts involved in this controversy.

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Edward A. Walters, Judge.

Appeals to the District Court from orders of the board of county commissioners reorganizing school district territory.

Orders of the board affirmed in District Court, from which School District No. 12 appeals. *Affirmed.*

V. O. Johnson and Paul S. Haddock, for Appellants.

When the county commissioners attempted to extend the boundary lines of Independent School District No. 16 so as to include the old unorganized lands which had never been in any other school district, they were attempting to do an act which the law did not countenance. The only territory they could deal with under the Minidoka county act was the actual territory which had formerly been organized school district but had become unorganized by reason of that act. That territory is definite and specific.

The following are the standard definitions of the word "adjoining": "To lie, or be next to or in contact with."

(Webster Dictionary; Crabbe's English Synonyms; Fernald's English Synonyms.)

"The word 'adjoining' in its etymological sense means 'touching' or 'contiguous' as distinct from 'lying near' or 'adjacent.'" (*In re Ward*, 52 N. Y. 395; *Bent v. Glaenzer*, 17 Misc. 569, 40 N. Y. Supp. 657; *Lewis v. Johnson*, 90 Fed. 673.)

"When an act of segregation is silent as to the common property and common debts, the old corporation retains all of the property within its new boundaries and is charged with the payment of all the debts." (*Johnson v. City of San Diego*, 109 Cal. 468, 42 Pac. 249, 30 L. R. A. 178; *Hughes v. Ewing*, 93 Cal. 414, 28 Pac. 1067; *Pass School Dist. v. Hollywood City School Dist.*, 156 Cal. 416, 105 Pac. 122, 20 Ann. Cas. 87, 26 L. R. A., N. S., 485; *Depere v. Town of Bellevue*, 31 Wis. 120, 11 Am. Rep. 602; *Commissioners of Laramie County v. Albany County*, 92 U. S. 307, 23 L. ed. 552; Dillon, Mun. Corp., sec. 188; *New Point Lodge etc. v. School Town of New Point*, 138 Ind. 141, 37 N. E. 650; *Bloomfield v. Glen Ridge*, 54 N. J. Eq. 280, 33 Atl. 925. See, also, 11 Cyc. 354, and cases cited.)

James R. Bothwell, for Respondent Dist. No. 16.

The word "adjoining" does not mean "abut," as used in this statute, but means "adjacent," "in the vicinity of" or "near by." (*Clark v. Coburn*, 108 Me. 26, Ann. Cas. 1913B, 168, 78 Atl. 1107; *School Dist. No. 74 v. Long*, 2 Okl. 460, 37 Pac. 601; *Board of Education v. Boyer*, 5 Okl. 225, 47 Pac. 1090; *Board of Education v. Jacobus*, 83 Kan. 778, 112 Pac. 612; *City of Hutchison v. Danley*, 88 Kan. 437, 129 Pac. 163.)

The term "adjoining" or "adjacent" should be defined according to the context or intention of the legislature. The intention of the legislature is most significant, that is, proper school facilities, and this could never be obtained under appellant's construction.

If the legislature had intended that the unorganized territory should be attached only to school districts which abut the unorganized territory, they would have used the word "contiguous" as they do in House Bill No. 43. "All statutes relating to the same subject should be construed together to ascertain the legislative intent." (*Snyder v. Thieme etc. Brewing Co.*, 173 Ind. 659, Ann. Cas. 1912A, 774, 90 N. E. 314.)

The facts upon which the county commissioners arrived at their decision will not be considered by this court, nor will this court disturb their action unless they find that it has been contrary to law. The court will not say what territory should or should not be attached to any particular school district. (*Gaiser v. Steele, ante,* p. 412, 137 Pac. 889.)

Adam Barclay and Henry Hall, for Respondent Dist. No. 33.

The two school districts, 33 and 36, had not been a single school district at the time the debts were created and 36 had no hand or share in the disbursement of the proceeds. The annexation was made by the county commissioners for the sole purpose of reorganizing a very large school district, which to the mind of the board, under the peculiar provisions of the law under which they were working, could be done in no other way. When the district thus created was divided, the territory that the legislature had made liable for the debts, that had created the debts and disbursed the proceeds, took with it all of the property for which the debts had been created. (28 Cyc. 227; *Johnson v. San Diego,* 109 Cal. 468, 42 Pac. 249, 30 L. R. A. 178.)

Harlan D. Heist, for Respondent Board, cites no authorities on points decided.

AILSHIE, C. J.—The 1913 session of the legislature enacted chaps. 3 and 4 of the laws of that session, creating respectively the counties of Minidoka and Gooding from territory formerly comprising the county of Lincoln. By sec.

16 of chap. 3, being the Minidoka county bill, and sec. 16 of chap. 4, being the Gooding county bill, it was provided, *inter alia,* as follows, both sections being alike:

"In the case the boundary line between the counties of Lincoln and Gooding shall divide any established school district, . . . . all such fractions of school districts . . . . shall be deemed to be, and hereby are declared to be unorganized territory of the counties in which they are situated, and it shall be the duty of the county commissioners of the counties in which said fractions of school districts . . . . are located and situated to attach such parts or fractions of former school districts . . . . to such adjoining school districts . . . . in their county, as they may determine best; and all money or property which shall belong to any school district . . . . which shall be thus divided by said county boundary line, as well as the bonded and floating indebtedness of such district, shall be apportioned and divided between the different parts thereof in a manner provided in sec. 7, hereof, for the division of the moneys, credits and property and apportionment of the debts of Lincoln and Gooding counties in ratio to the assessed valuation of such school district. . . . . "

These bills passed the legislature in the month of January and in the middle of a school year. The schools were all running, and, among others, was Independent School District No. 33, being the Jerome school, employing a large number of teachers and having more than 400 pupils in the schools.

Each bill carried an emergency clause, making the bill operative at once. No provision whatever was made for taking care of the school children or carrying on the school. The welfare of the school children and of the public schools was only a secondary matter to the paramount issue of county division. The creation of new counties was of such overwhelming importance that the running of the public schools was practically lost sight of.

The school trustees and the county commissioners and those interested in the work of the schools immediately began to cast about to find some way out of the difficulty. The Shoshone district, which was not an independent school district,

was left intact, and the most valuable part of the territory, from a revenue point of view, which had been divided, consisted of a long stretch of the Short Line railroad track and right of way. It appears to have been the custom for each of the various school districts to reach out and take in a part of the railroad in order to increase its revenue and maintain its schools. So when the bills passed, cutting off Minidoka and Gooding counties from the old county of Lincoln, that left about eight districts disorganized. The commissioners of Lincoln county were immediately confronted with the problem of taking care of the territory and children living therein that was left in said old county as "unorganized" territory. District No. 12 (Shoshone), Independent District No. 16 (Richfield), and disorganized or unorganized district No. 33 (being Jerome independent school district), at once became interested in the division of this territory, district No. 12 (being the Shoshone district) claiming practically all. After canvassing the matter, some six orders were made by the board, of which Shoshone District No. 12 complains.

These orders are stated in appellant's brief as follows:

"First: Order enlarging school district No. 16 (Richfield) so as to include portions of disorganized school district No. 23, and other territory, which is appealed from by John W. McFall, being civil case No. 846.

"Second: Order attaching certain portions of disorganized school district No. 6 and 15 to district No. 12, appealed from by Paul S. Haddock, being civil case No. 843.

"Third: Order of the county commissioners attaching portions of school district No. 33 to school district No. 36. Appealed from by Paul S. Haddock, being civil case No. 842.

"Fourth: Order of the county commissioners attaching certain portions of disorganized school districts No. 6 and No. 25 to school district No. 36. Appealed from by Paul S. Haddock, being civil case No. 844.

"Fifth: Order of the board of county commissioners creating new school district No. 33 out of territory of enlarged school district No. 36. Appealed from by Paul S. Haddock and being civil case No. 845.

"School district No. 12 appealed from all of these orders and consolidated all of said appeals in one case, being civil case No. 841."

Appeals were taken from all these orders to the district court. After a hearing, the district court entered an order and decree affirming the action of the board of commissioners. From that judgment this appeal has been prosecuted.

After an examination of the entire record and the briefs of the respective counsel, we have concluded that the judgment of the district court should be affirmed, and we do not deem it of value to anyone that we go into a detailed discussion of the various orders here involved and the several legal propositions advanced. We shall only briefly mention a few of the more important points suggested.

It is well to say in the outset that the commissioners and authorities of Lincoln county, when they suddenly found the school districts disorganized and their schools running without any authority of law, were confronted with a duty and necessity in which the letter of the law furnished them no precedent or direction, and they were accordingly obliged to call to their assistance their best judgment and common sense in handling the situation. If, in a case of this kind, the courts should undertake to follow out the niceties of legal arguments and technical observances of the law, it would certainly leave the people and the school situation in that county in a most lamentable condition. Fortunately, however, the officers intrusted with the solution of this problem were authorized to attach the unorganized territory left in the county by reason of the destruction of these districts to "such adjoining school districts . . . . in their county as they might determine best." They were given some discretion by this bill, and they were also vested by the general school laws with the power of supervision over these matters. The board of commissioners are authorized to form new districts and to attach unorganized territory to old districts. The new county bills declared that all districts divided should thereafter be "unorganized territory." When these districts became unorganized territory, they were in the same category with any

other territory in the county which had not theretofore been comprised in an organized school district.

One of the complaints made here by appellant against attaching certain of this territory to the Richfield district was that the territory was not *contiguous* or *adjacent* to the Richfield district, for the reason that there was a body of unsurveyed, unoccupied and unorganized territory lying between the Richfield district and the Oregon Short Line right of way which was given to the Richfield district. The order, however, of the board of commissioners included all the intervening territory between the old Richfield district and the disorganized territory which was included. The board had the right to include any unorganized, adjacent or contiguous territory, and the fact that the particular territory which they were anxious to take in did not immediately abut upon the Richfield district as originally existing did not prevent the commissioners including the other unorganized territory which lay between the two and including the whole in the Richfield district.

The same is true with reference to the Jerome District No. 33. Complaint is made of the action of the board in attaching the unorganized Jerome district to district No. 36 and then including in district No. 36 a portion of the unorganized territory embracing the Short Line right of way, and thereafter setting apart the Jerome Independent District No. 33, together with the portion of attached territory along the Oregon Short Line.

It is true that this was a somewhat circuitous way of reaching the matter, and yet we think it was within the letter of the law. Nevertheless, we think what was accomplished by these orders might have been accomplished directly by an order reorganizing Jerome Independent School District No. 33 without first attaching it to any other district, and thereafter attaching to that district the unorganized territory now in question. The authority granted by the county division bills to attach ''unorganized territory'' to ''organized districts'' was only accumulative and was not exclusive. The power to attach these unorganized districts to existing dis-

tricts did not deprive the board of the existing power to create and organize districts. Prior to the division there had existed in Lincoln county Jerome Independent District No. 33. When the Gooding county division bill passed, it cut off a comparatively small portion of the district into the new county of Gooding. If enough taxable property and school children were left in the old district, even though the law declared it unorganized territory, it was clearly within the power of the board of commissioners to make an order declaring that the remaining territory should still constitute Jerome Independent District No. 33 and continue their schools along the same as they had done before. The power to make such an order would not deprive them of the power to attach to such district any adjoining or contiguous unorganized territory which they might deem proper and expedient to be attached to such district.

Some complaint has been made about the result of the action of the board in attaching the unorganized Jerome territory to district No. 36, in that it is claimed it transferred to them a large bonded indebtedness. Had the Jerome territory been left in school district No. 36, that district would undoubtedly have been obliged to meet this bonded indebtedness; but when the same territory together with additional territory was reorganized into Jerome Independent District No. 33, the reorganized district was still liable for the bonded indebtedness of the old district as the same was directed by sec. 16 of the division bill to be apportioned between the two segments of the district. We do not see where district No. 36 suffered by the process of attaching and detaching this territory.

A multitude of other questions have been argued and discussed in this case, but it is wholly unnecessary to consider them in a written opinion.

The judgment must be affirmed, and it is so ordered.

Costs awarded in favor of respondent.

Sullivan, J., and Stewart, J., concur.

Petition for rehearing denied.